Essex,
*March*,
1837.

NATHAN BEECHER *v.* JOSIAH PARMELE and two others.

——————— If two persons own equal parts of a lot of land in severalty, but not divided
by any visible monuments, if both are in possession of their respective
parts for fifteen years, acquiescing in an imaginary line of division during
that time, that line is thereby established as the divisional line.

That line, in such case, will be considered as drawn through the centre, in
such manner as to leave the parts equal and as nearly similar as possible,
unless the parties have evinced a consent that it shall be otherwise
drawn, in which case their consent or acquiescence will govern.

The proprietor of land, having right to immediate possession, may expel a
mere intruder upon the same, by such force as may be necessary, and he
will, in any event, acquire a rightful possession of the land, and if he be
guilty of a breach of the peace or a trespass upon the person of the intru-
der, he must answer for that.

The declarations of one in possession of land, whether as tenant or proprie-
tor, are evidence (as against those, who derive their possession through
him,) of the manner in which the land has been occupied.

The party is not obliged to show such declarations by the person making
them, although he be living and a competent witness.

This was an action of trespass on the freehold. Plea, the
general issue and trial by jury. The principal question was one
of boundary. The lot of land in controversy was called lot No.
four, in the second division of lots in Canaan, in said county. It
was admitted that plaintiff had title to the southerly half of said lot,
and those, under whom defendants claimed, had title to the nor-
therly half. The whole lot was in a triangular form, nearly
equilateral. The parcel of land in immediate controversy, was
called by way of distinction, the " barley piece," and had been
first partly cleared by defendants, claiming to hold it as tenants
to one Buckminster, he having a deed of the northerly half of
said lot. The testimony tended to show, first, that said lot had
never been divided but that plaintiff and defendants, and those
under whom they claimed, had occupied the land in severalty,
for more than twenty years, one claiming the south and the other
the north part of the lot, by the description of the " south half,"
and the " north half," each having made improvements, near the
point of a line from one apex of the triangle to the centre of the
opposite side, thus evincing an expectation that the lot should be
divided at or near that point. Upon this part of the testimony,
the court instructed the jury, that if, for more than fifteen years,
the parties, and those occupying the different parts of the lot, had
acquiesced in an equal division of the land, by a line passing in

that direction, the jury would consider the line of division drawn from the apex of the triangle to such a point in the opposite side, as would leave the quantity of land equal on both sides of the line. The testimony also tended to shew that, more than thirty years ago, the land had been divided by actual survey, and a line spotted, which had, ever since, been acquiesced in by the occupiers of the two halves of the lot. The jury was instructed that, if this was the fact, the line would govern as to the division of the lot, notwithstanding there was more land upon one side of the line than the other. There was testimony tending to shew that the defendants had, thereafter, partly cleared the "barley piece." The plaintiff forcibly, but not by breach of the public peace, took possession of the same, and continued to occupy till the defendants entered and took away the barley, as set forth in plaintiff's declaration. The defendants contended that, having once taken possession of the land under claim of title by deed, they were not liable to be sued as trespassers by the owner of the land even, who had entered upon their possession, and was in quiet possession at the time of the defendants' entering and carrying away crops raised by plaintiff, and requested the court so to charge, but the court refused so to charge, but did charge upon this point, that if the land was the plaintiff's, and he in quiet possession, and defendants entered forcibly upon him, as above stated, he should recover. There was testimony tending to shew that one Boothe had been in possession of that half of the lot, occupied by defendants, some thirty years ago, and that he had, while in possession, admitted the existence of a line of division, which would not include the "barley piece," on his half. The court instructed the jury, that this testimony was to be weighed for the purpose of determining what line of division, if any, had been acquiesced in by the occupants of the two parts of the lot. To all which instruction the defendants excepted.

*T. Bartlett, for defendants.*

I. The defendants were in possession, claiming to hold the land by deed, at the time of the plaintiffs' entry upon their possession.

II. The defendants had made improvements thereon.

III. Ejectment, and not trespass, is the proper form of action to try the title to the land in dispute. The defendants entered and made improvements, as tenants to Buckminster, supposing

Essox,
March,
1837.

Beecher
v.
Parmele
and Others.

Essex.
March,
1837.

Beecher
v.
Parmele et al.

that they had a good title and right of possession, and they are entitled to their "betterments" in pursuance of the statute. And the entry of the plaintiff upon the defendants' possession cannot be justified or supported by any decision upon this subject. If the plaintiff could thus enter and usurp possession by force and keep out the defendants, even supposing the title of the *locus in quo* to be in the plaintiff, he thereby deprives the defendants of the benefit of a remedial statute of this State, known as the act in relation to betterments. It is believed that no reported case can be found, where it has been decided, that the owner of land may enter and dispossess the occupant, who claims to hold the land by deed, having entered under color of title, and made improvements. The full extent of the authorities upon this subject is, that the owner of land may enter upon any one he may find in possession, who has nothing but a bare naked possession, without color of right or title, and dispossess him. *Hyat v. Wood*, 4 Johnson's Rep. 150.

IV. The defendants contend, that the county court erred in not rejecting the evidence of Boothe's admissions, and in the instructions given to the jury in relation to the said evidence. Because,—

1. That evidence was liable to all the objections, which appertain to hearsay testimony, and for aught that appears, Boothe is now living and within reach of the process of this court.

2. It does not appear that Boothe ever had any interest in any part of said lot, and, for aught that appears, was a naked trespasser, and wrong-doer, while in possession of that part of the lot now claimed by the defendants.

3. The court should have instructed the jury, that said testimony ought not to be weighed by them, not having any tendency to prove or disprove the issue—for a freehold cannot pass by parol.

*W. Heywood, for plaintiff.*

I. The first point in the charge of the court was right. A division of the lot, in the manner specified, would give the plaintiff the southerly half, and the defendants the northerly half of the lot, according to their respective interest in it.

The occupation of the land in this manner, for fifteen years, affords presumptive evidence of a division agreeably to the manner in which it was occupied. *Mitchell v. Walker*, 2 Aikens' Rep. 266. *Shumway v. Simons*, 1 Vt. Rep. 53. *Hazard v.*

*Martin*, 2 id. 77. *State* v. *Wilkinson*, 2 id. 480. *University* v. *Reynolds*. 3 id. 542. *Stevens*, Administrator, v. *Griffith et al.* 3 id. 448.

II. In analogy to our statute of limitations, fifteen years possession affords presumption of a right. Under the English statute, twenty years uninterrupted enjoyment is a bar to an action of ejectment, and in analogy to this statute, after twenty years uninterrupted enjoyment, the courts of England have directed the jury to presume a deed, a record, and even impossibilities, in order to quiet the possession. 3 Stark. Ev. 1214 & Seq.

The courts in Vermont, in the cases above cited, have followed the English cases, in the doctrine of presumptions.

III. Under the charge of the court, the jury must have found that the title to the "Barley piece" was in the plaintiff. The defendants, as trespassers, went on to it and partly cleared it, when the plaintiff entered and took possession of it, as he had a perfect right to do, provided he could do it without a breach of the public peace. The plaintiff finished clearing it, and sowed it to barley, and it remained quietly in his possession till the barley had ripened, when the defendants forcibly entered and took the barley. Possession is necessary to maintain trespass. In this case, the plaintiff had the possession and the title. What bearing then, has the fact, that, some months previous to the trespass sued for, the defendants had illegally the possession of the premises?

IV. The sayings of Boothe were admissible, upon the ground that they were against his interest. It is a general rule that hearsay evidence, in questions of boundary, are admissible. 1 Stark. Ev. 65. 3 id. 1207.

The opinion of the court was delivered by

REDFIELD, J.—If an entire lot be owned by different proprietors, who are in possession of separate parcels of the lot, and a divisional line is acquiesced in for fifteen years, it is thereby established. If no line of division be in fact drawn, but the parties acquiese in an imaginary line of division, this is the same as if the line had been marked by visible monuments. If a person own the whole of a lot, and convey a given number of acres off one end, or one side, this is to be understood by a line parallel to the lot line. If two own a lot in equal portions, in severalty, but in fact not divided, and enter on extreme parts of

Essex,
March,
1837.

Beecher
v
Parmele et al.
the lot, each upon his own portion, it will be considered, that they intend a division by a line drawn through the centre, leaving the two parts as nearly similar, as they can be and be equal. These propositions in relation to conveyances have been considered, as settled, for many years. In Orleans county, on the last circuit, it was decided, that the levy of an execution upon a specified number of acres, " off of the east end" of a lot, the lot being in a rectangular form, was a sufficient description by metes and bounds. And in the present case, the parties owning equal parts of the lot, and having evinced an acquiescence in a similar divisional line, drawn from one apex of the triangle, it must of course be drawn to such point in the opposite side, as will divide the land equally.

The question whether the defendants had such a previous possession of the land in dispute, as will prevent their being sued as trespassers, does not seem very different from the main question in the case. If the defendants had possession of the land first, and had equal right to the land, they should, and under the charge of the court, would have recovered. If they went into possession without right, and as mere trespassers upon the plaintiff's rights, he having a superior right to the land, he might well put the defendants out of such wrongful possession, and if he did it by force even, he would acquire a rightful possession, and would, at most, only be liable for a breach of the peace, or a trespass upon the person of defendants. It was formerly considered that the proprietor of land, who found an intruder in quiet possession of the same, must resort to his legal remedy, and could not forcibly expel such wrong doer. But it is now well settled, that such intruder may be forcibly expelled, so far as the land is concerned. If the owner of the land is guilty of a breach of the peace, and trespass upon the person of the intruder, in so doing, he is liable for that, but his possession of the land is lawful, and he may maintain it, or sustain any proper action for an infringement of it.

The declarations of Boothe, while in possession of the land, whether as tenant or proprietor, were correctly admitted. It was material for the jury to determine whether any divisional line had been acquiesced in. Boothe had been in possession of the portion claimed by Buckminster, and in the chain of occupants, under whom Buckminster claimed, and, while so in possession, had disclaimed all pretension to hold or occupy the land in

dispute, by pointing out a different line. It does not appear that he had been in possession for fifteen years, but he and others had been in continued possession of the portion of the lot, claimed by Buckminster, for more than fifteen years, and the line claimed by them was important to be ascertained. This could only be done by knowing what claims or declarations, in regard to the line, they had made while in possession. These claims or declarations were the *facts* for the jury to find. Their force did not depend upon the *veracity* of the person, who made them ; for whether Boothe had been false or fair spoken, was all the same. The question was, did he make the declarations, or, in other words, was a line acquiesced in by both the claimants, giving the land in dispute, to plaintiff—and this for more than fifteen years ? If so, that line became conclusively established. That can only be determined by knowing what claims the several occupants made, while in possession of the land. This is much like the case of an agent, who goes to another for the purpose of making a demand or giving notice. The declarations of the agent, at the time and place, and to the opposite party, are the *facts* to be found. The agent may be called or not, at the option of the party. If called, the party is not bound by his testimony. If he denies making the demand or giving the notice, other witnesses may be called, or they may be called in the first instance. So, had Boothe been called, and denied making these declarations, the plaintiff might still have shown by other witnesses, that he did, in fact, make them.

Judgment affirmed.